**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ANGELA MARIE MEADOWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-2223 (GK) |
| ) | |
| MICHAEL B. MUKASEY,[1] ) | |
| Attorney General, ) | |
| U.S. Department of Justice, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Angela Marie Meadows, a suspended employee of the Department of Justice who is proceeding pro se, brings this suit alleging disability discrimination and retaliation in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et seq. against Attorney General Michael B. Mukasey. This matter is before the Court on Defendant's Motion for Summary Judgment [**Dkt. No. 61**]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion for Summary Judgment is **granted** as to Counts I through V of the Third Amended Complaint and **granted in part and denied in part** as to Count VI.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Attorney General Michael B. Mukasey is automatically substituted as defendant for former Attorney General Alberto Gonzales.

**I.      BACKGROUND[2]**

Plaintiff was a senior GS-12 analyst at the United States National Central Bureau ("USNCB"), the Department of Justice agency responsible for facilitating U.S. law enforcement cooperation with INTERPOL.  Plaintiff specialized in international art theft and forgery and was the Program Manager of USNCB's Art and Cultural Property Program.  The position required Plaintiff to maintain a security clearance.

Starting in 2000, Plaintiff began to be frequently absent from work.  She missed 295 work days from January 2000 through October 2002--or more than an entire work year.  Indeed, in both 2001 and 2002, Plaintiff was not present for more than half of the available work days.  Defendant claims that her absences were frequent, excessive, and unpredictable and rendered her unable to perform her job.  As a result of these frequent absences from work, for example, Plaintiff missed a meeting with the Executive Director of the Bolivian National Museum of Ethnology and an INTERPOL conference in Honduras.

Plaintiff offered a variety of reasons for these absences, including the fact that she suffered from depression which was aggravated by her sister's illness and death from cancer.

---

[2] Unless otherwise identified, the facts set forth herein are undisputed and drawn from the Third Amended Complaint and Defendant's Statement of Material Facts Not in Dispute submitted pursuant to Local Civil Rule 7(h).

Significantly, however, Plaintiff does not contest her record of absences and admitted at her deposition that she was unable to adequately perform her job because of her attendance record.

The Defendant argues that the USNCB was forced to take a number of disciplinary measures as a result of Plaintiff's frequent and unpredictable absences. On October 26, 2000, Plaintiff's supervisor, Steven Markardt, issued a leave restriction letter that imposed a series of additional requirements and restrictions that Plaintiff was required to comply with when taking leave in the future. She later failed to comply with these additional leave restrictions.[3]

On December 26, 2000, Plaintiff had a meeting with Aaron BoBo, a member of USNCB management, regarding her absences. At that meeting she informed him that she had met with an EEO counselor and intended to file a formal complaint alleging discrimination by the agency. Following the meeting, Mr. BoBo sent an e-mail to Richard Haisch,[4] in which he described the meeting and asked the following:

> Here is my question...she has told me that she is going to file an EEO complaint against her supervisor...we are considering reassigning her to another GS-12 Sr. Analyst position...I have not told anyone else in Mgmt. that she has told me about her filing or intent to file a

---

[3] In one meeting with a supervisor in September 2000 regarding her excessive absences, she requested that the USNCB be reorganized and that she <u>and</u> the Art and Cultural Property Program be placed under a different supervisor.

[4] Mr. Haisch's role within USNCB is unclear from the present record.

3

> complaint. If we reassign her now are we on tenable ground??? Just because an employee says they are going to file or does file are they protected from management's desire to reassign them based on programmatic need??? I think we can but I need your input before we go forward.

E-mail from Aaron BoBo to Richard A. Haisch, December 26, 2000.

Mr. Haisch responded:

> If you reassign this employee at this point in time, you should have a very good business reason. One of my concerns would be that such an action could be construed as admitting there is a problem with the supervisor's treatment of the employee. I would suggest we wait until the counseling stage is completed, and revisit the question at that point.

E-mail from Richard A. Haisch to Aaron BoBo, December 28, 2000.

In January 2001, Plaintiff's responsibilities as Manager of the Art and Cultural Property Program were reassigned. An e-mail from Mr. BoBo to Plaintiff noted that he had met with her EEO counselor earlier that day and explained USNCB's rationale for the move:

> As a result of your continued unauthorized, unexpected and extended absences, Management had to reevaluate your ability to continue to perform the duties in the Cultural Property Program Manager position to its expectations.... As a result of the lack of sufficient Medical Documentation, Management's evaluation and your EEO request, it has been determined to reassign you to other duties.

E-mail from Aaron BoBo to Angela Meadows, January 22, 2001.

Nevertheless, Plaintiff's pattern of absences continued, and Mr. Markardt recommended that Plaintiff be suspended for five days on March 27, 2001. Plaintiff filed an appeal of the proposed suspension on April 6, 2001 to USNCB Deputy Chief James Sullivan.

4

On June 19, 2001, Mr. BoBo sent an e-mail to Mr. Sullivan urging him to approve the suspension for a number of reasons, including the following:

> From statements made by Angela, on numerous occasions, she has asked coworkers to give testimony against her supervisor Stephen Markardt in her upcoming EEO Complaint/Suit. Due to the fact that she has engaged in this behavior, of soliciting support from coworkers, it is even more important that management move forward in disciplining unacceptable behavior which directly impacts the work place. Management must to [sic] communicate to the workforce that unacceptable behavior and or performance will be disciplined fairly.

E-mail from Aaron BoBo to James Sullivan, June 19, 2001. Mr. Sullivan later approved the suspension on September 17, 2001, although he reduced the suspension from five days to three.

Mr. Markardt issued a new leave restriction letter on April 19, 2001, which noted Plaintiff's failure to comply with the initial leave restriction letter and extended the terms of the initial letter for an additional six months.

On May 31, 2001, the Department of Justice suspended Plaintiff's security clearance because she had failed to sign a medical release as part of a routine, periodic background re-investigation. As a result, Mr. Sullivan informed Plaintiff that she was no longer allowed to access certain databases that contained classified information. Due to the suspension of the security clearance, USNCB later temporarily reassigned Plaintiff to the Administrative Services Division Communications Center, effective September 18, 2001. Following this temporary

5

reassignment, Plaintiff retained the same pay and benefits as before and remained at the GS-12 level.

Plaintiff's attendance continued to be infrequent after she was transferred to the Communications Center. Mr. BoBo, Plaintiff's new supervisor, issued a notice of a proposed fourteen-day suspension on December 19, 2001 based on Plaintiff's continued absences from work. She appealed this proposed suspension to Robert Miyashiro, Assistant Chief of the Administrative Services Division. On February 28, 2002, Mr. Miyashiro approved the suspension but reduced it to thirteen days.

Plaintiff's security clearance was completely revoked on August 26, 2002, following her arrest and guilty plea for drunk driving. On September 17, 2002, Mr. BoBo proposed that Plaintiff be suspended indefinitely. She appealed the proposed suspension to Mr. Sullivan, who approved it on October 9, 2002 based upon the revocation of Plaintiff's security clearance.

Plaintiff filed this suit in December 2004. She stated six causes of action in the Third Amended Complaint: (1) disability discrimination in violation of the Rehabilitation Act in that Defendant failed to provide a reasonable accommodation for Plaintiff's depression; (2) disability discrimination in that she was regarded as being depressed and Defendant failed to provide a reasonable accommodation; (3) disability discrimination in that Defendant created a hostile work environment and subjected

6

Plaintiff to disparate treatment because of her disability; (4) disability discrimination in that Defendant created a hostile work environment and subjected Plaintiff to disparate treatment because she was regarded as having depression; (5) disability discrimination in that Defendant created a hostile work environment and subjected Plaintiff to disparate treatment because she was regarded as having a drug or alcohol dependency; and (6) retaliation.

**II.   STANDARD OF REVIEW**

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  A fact is "material" if it might affect the outcome of the action under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Once the moving party makes its initial showing, however, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324. Accordingly, the nonmoving party must provide evidence that would

permit a reasonable jury to find in his or her favor. Liberty Lobby, 477 U.S. at 255-56. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). In reviewing the evidence, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

**III. ANALYSIS**

    **A.    Defendant's Motion for Summary Judgment Is Granted as to Counts I through V**

The Rehabilitation Act, 29 U.S.C. § 794(a), prohibits discrimination against "otherwise qualified" federal employees with a disability. Id.; Carr v. Reno, 23 F.3d 525, 528 (D.C. Cir. 1994). An employee is not "qualified" under the Act if her workplace attendance is so infrequent that she is unable to perform her job. Carr, 23 F.3d at 530. "We agree with the proposition that an essential function of any government job is an ability to appear for work...and to complete assigned tasks within a reasonable period of time." Id.

In Carr, the plaintiff was employed as one of two docketing clerks at the United States Attorney's Office. Id. at 527. Her position required her to docket certain police reports by a set time everyday. Id. Plaintiff suffered from a medical condition that led to frequent, unpredictable absences from work without

advance warning.  Id.  Over a period of several years, she was absent from work between 200 and 500 hours a year.  Id.  The U.S. Attorney's Office therefore could not function on a daily basis without assigning plaintiff's work to others.  Id. at 529.  The Court of Appeals held that the plaintiff was not "otherwise qualified" under the Rehabilitation Act because of her poor attendance record and she could not therefore prevail on her Rehabilitation Act claims.  Id. at 530.

In this case, Plaintiff was the Manager of the USNCB's Art and Cultural Property Program.  She was frequently and unpredictably absent from work.  She missed almost 800 hours of work in 2000 and more than 1100 hours in both 2001 and 2002, a level of absences that far exceeds those involved in Carr.  Plaintiff does not contest her attendance record. Most significantly, she admitted at her deposition that she could not perform her job properly because she was not able to be at work on a regular basis.  As a result, USNCB reassigned Plaintiff from her regular duties as manager of the Art and Cultural Property Program.

Plaintiff's record of repeated, unpredictable absences--a record she does not dispute--renders her unqualified as a matter of law under the Rehabilitation Act.  See id.  Accordingly, Plaintiff may not recover damages for her Rehabilitation Act claims in Counts I through V and Defendant is entitled to summary judgment as to those counts.

**B.   Plaintiff's Retaliation Claim in Count VI Presents a Genuine Dispute of Material Fact**

**1.   The McDonnell-Douglas Burden Shifting Framework**

Claims of retaliation for engaging in protected EEO activity are governed by the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Holbrook v. Reno, 196 F.3d 255, 263 (D.C. Cir. 1999).

Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of retaliation. See McDonnell Douglas, 411 U.S. at 802. Once the plaintiff establishes a prima facie case, the defendant must "'produc[e] evidence' that the adverse employment actions were taken 'for a legitimate, non-discriminatory reason.'" Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)). Once the defendant has done so, "the presumption...raised by the prima facie case is rebutted" and "drops from the case." Id. (quoting Hicks, 509 U.S. at 507). For purposes of surviving summary judgment, the plaintiff must then show that a reasonable jury could infer that the proffered legitimate reason was false and that defendant's actions were intended as retaliation from a "combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of [retaliation] that may be available to the plaintiff." Id. at 1289.

### 2. Defendant Has Produced Evidence Showing that the Adverse Employment Actions Were Taken for a Legitimate, Non-Discriminatory Reason

The Defendant concedes, for the purposes of this Motion, that Plaintiff has established a prima facie case of retaliation.[5] Therefore, under the McDonnell Douglas framework, the Defendant must produce evidence that the adverse employment actions in question were taken for a non-discriminatory reason.

Plaintiff alleges that the following actions by USNCB constituted retaliation: (1) the decision to place her on leave restrictions for two six-month periods beginning in October 2000 and April 2001; (2) her three-day suspension in September 2001 and her thirteen-day suspension in February 2002; (3) the decision to reassign her duties as Manager of the Art and Cultural Property Program in January 2001; and (4) her reassignment to the Administrative Services Division Communications Center in September 2001, and (5) later indefinite suspension in September 2002, after her security clearance was suspended and later revoked.

---

[5] To establish a prima facie case of retaliation, a plaintiff must prove that (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007). The Court recognizes that, pursuant to the Court of Appeals' recent decision in Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008), the Court no longer needs to address whether a plaintiff has set forth a prima facie case in employment discrimination cases.

Defendant has produced admissible evidence showing that the two leave restriction letters, the two suspensions issued to the Plaintiff, and the decision to reassign her as Art and Cultural Property Program Manager were all the result of Plaintiff's excessive and unpredictable absences from work.[6]  The <u>McDonnell Douglas</u> burden-shifting presumption therefore falls from the case, and Plaintiff must show that a reasonable jury could find in her favor to survive summary judgment.  See <u>Brady</u>, 520 F.3d at 494.

### 3. Plaintiff Has Demonstrated the Existence of a Genuine Dispute of Material Fact as to Some of the Alleged Instances of Retaliation

Plaintiff has come forward with sufficient evidence for a reasonable jury to conclude that some of USNCB's adverse employment actions were intended as retaliation for Plaintiff's protected EEO activity.  In particular, Plaintiff has identified three e-mails that raise a genuine dispute of material fact as to some of her claims of retaliation.

Plaintiff points to the December 26, 2000 e-mail from USNCB supervisor Aaron BoBo to Richard Haisch, in which Mr. BoBo inquires whether management was precluded from reassigning her to another position solely because she was contemplating EEO activity.  Less than a month later, on January 22, 2001, Mr. BoBo sent an e-mail to

---

[6] For the reasons discussed in Section III.B.4. below, the Department of Justice's decisions to suspend and then revoke the Plaintiff's security clearance, and her resulting reassignment to the Administrative Services Division Communications Center and ultimate indefinite suspension, are not judicially reviewable.

Plaintiff informing her that she was being reassigned from her job responsibilities as Manager of the Art and Cultural Property Program. Mr. BoBo cited three reasons for Plaintiff's reassignment: "the lack of sufficient Medical Documentation [of Plaintiff's alleged disability], Management's evaluation <u>and your EEO request</u>." E-mail from Aaron BoBo to Angela Meadows, January 22, 2001 (emphasis added).

Mr. BoBo also encouraged USNCB Deputy Chief James Sullivan to approve a proposed five-day suspension of the Plaintiff in a June 19, 2001 e-mail. In that e-mail, Mr. BoBo criticized Plaintiff's decision to pursue her disability claim through the EEO process and argued that such "unacceptable behavior" was a reason to issue the suspension:

> From statements made by Angela, on numerous occasions, she has asked coworkers to give testimony against her supervisor Stephen Markardt in her upcoming EEO Complaint/Suit. <u>Due to the fact that she has engaged in this behavior, of soliciting support from coworkers, it is even more important that management move forward in disciplining unacceptable behavior which directly impacts the work place.</u> Management must to [sic] communicate to the workforce that unacceptable behavior and or performance will be disciplined fairly.

E-mail from Aaron BoBo to James Sullivan, June 19, 2001 (emphasis added).

Drawing all reasonable inferences in favor of Plaintiff, a jury could infer from this evidence that the reassignment of Plaintiff's duties as Manager of the Art and Cultural Property

13

Program and the three-day suspension issued by Mr. Sullivan were intended as retaliation for Plaintiff's protected EEO activity.

The Defendant argues that Mr. BoBo's June 19, 2001 e-mail is immaterial because there is no evidence that Mr. Sullivan was influenced in any way by Mr. BoBo's e-mail.  However, a jury could reasonably find that Mr. Sullivan considered all available information, including Mr. BoBo's e-mail, in approving the three-day suspension and that he was swayed by Mr. BoBo's rationale in approving the suspension.  In the final analysis, the question of whether Mr. Sullivan was influenced by Mr. BoBo's e-mail is a question for the jury to decide.

Plaintiff, however, has failed to produce any evidence that the two leave restriction letters and the thirteen-day suspension issued in 2002 were intended as retaliation for Plaintiff's EEO activity.  Defendant is therefore entitled to summary judgment on Plaintiff's retaliation claims as to those actions.

### 4. The Revocation of Plaintiff's Security Clearance and Her Resulting Reassignment to the Communications Center and Ultimate Indefinite Suspension Are Not Judicially Reviewable

"Because the authority to issue a security clearance is a discretionary function of the Executive Branch...employment actions based on denial of security clearance are not subject to judicial review." Bennett v. Chertoff, 425 F.3d 999, 1001 (D.C. Cir. 2005); Ryan v. Reno, 168 F.3d 520, 524 (D.C. Cir. 1999) ("an adverse employment action based on denial or revocation of a security

clearance is not actionable under Title VII"). It is undisputed that Plaintiff was required to maintain a security clearance for her position as manager of the Art and Cultural Property Program. This security clearance was temporarily suspended in May 2001 and, as a result, she was transferred to the Communications Center of the Administrative Services Division. After her security clearance was permanently revoked in August 2002, she was suspended indefinitely. As these employment actions were based on the suspension and revocation of Plaintiff's security clearance, they are not judicially reviewable.

Plaintiff argues that the suspension of her security clearance was only a pretext for her transfer to the Communications Center. However, no jury can determine the credibility of such a claim because it would require an impermissible examination of the executive branch's decision to revoke Plaintiff's security clearance. Bennett, 425 F.3d at 1003; Ryan, 168 F.3d at 524. Thus, Plaintiff's retaliation claim concerning her reassignment to the Communications Center and later indefinite suspension is not actionable.

For the reasons stated above, Defendant is entitled to summary judgment on Plaintiff's claims for retaliation in Count VI based on (1) the two leave restrictions issued in October 2000 and April 2001; (2) Plaintiff's thirteen-day suspension in February 2002; and (3) her reassignment to the Administrative Services Division

Communications Center in September 2001 and (4) her indefinite suspension in September 2002. Plaintiff may proceed to trial on her retaliation claims based on (1) the decision to reassign her duties as manager of the Art and Cultural Property Program in January 2001; and (2) her three-day suspension in September 2001.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment [**Dkt. No. 61**] is **granted** as to Counts I through V of the Third Amended Complaint and **granted in part and denied in part** as to Count VI. An Order shall accompany this Memorandum Opinion.

May 29, 2008

/s/
Gladys Kessler
United States District Judge

**Copies to: Attorneys of record via ECF and**

**Angela Marie Meadows**
**440 West Georgia Street**
**Woodruff, South Carolina 29388**